IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGNE DIVISION

DEBORAH ELAINE RUSSI,

    Plaintiff,

vs.

CATHERINE WISSENBACK,

    Defendant.

Case No. 6:18-cv-01028-AA
**OPINION AND ORDER**

AIKEN, District Judge:

Plaintiff Deborah Russi filed this action against defendant Catherine Wissenback, asserting claims of (1) abuse of a vulnerable person under ORS 124.100; (2) intentional infliction of emotion distress ("IIED"); (3) invasion of privacy (intrusion upon seclusion); and (4) a civil action under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g) ("CFAA"). Defendant moves to dismiss plaintiffs, first, second, and fourth claims.

For the following reasons, defendant's partial Motion to Dismiss (doc. 9) is GRANTED.

## BACKGROUND

Plaintiff and defendant are sisters. Their father established a trust, and plaintiff's husband, Joseph Russi, is the trustee. Plaintiff alleges that defendant became upset either about her lack of beneficial interest in the trust, or the fact that Mr. Russi was named trustee and began to harass plaintiff through phone calls, voice mails, text messages, email, and social media. Defendant's threatening and harassing communications made plaintiff fear for her physical and emotional safety.

Plaintiff also alleges that defendant further harassed her by (1) using plaintiff's personal email account to send plaintiff's "confidential personally-identifying information to third parties" in an effort to spam plaintiff with unwanted emails; (2) logging into plaintiff's financial accounts; and (3) using plaintiff's identify to engage in a "presently unknown number of online transactions." Amend. Compl. ¶ 8(a).

Plaintiff suffers from multiple myeloma, a form of cancer, and is deemed disabled by the Social Security Administration. Plaintiff alleges that her medical condition and physical vulnerabilities make her susceptible to emotional injury, threats, duress, and undue persuasion. Plaintiff further alleges that defendant's actions caused her severe anxiety and emotional distress, which in turn "worsened" her medical condition. Amend. Compl. ¶ 9.

On June 11, 2018, plaintiff filed this action against defendant, asserting claims of (1) abuse of a vulnerable person, ORS 124.100; (2) IIED; (3) invasion of privacy; and (4) a civil action under the CFAA. On October 10, 2018, plaintiff filed an

Amended Complaint asserting the same claims. Defendant now moves to dismiss plaintiff's first, second, and fourth claims.

## STANDARDS

When considering a motion to dismiss, a court construes a complaint in favor of the plaintiff and takes all factual allegations as true. *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A "formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement" and not sufficient to state a plausible claim. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013).

## DISCUSSION

Defendant moves to dismiss the following claims: (1) abuse of a vulnerable person, ORS 124.100; (2) IIED; and (4) violation of the CFAA. Alternatively, defendant moves for an order to make the complaint more definite and certain. I address each in turn.

As a preliminary matter, plaintiff's pleadings frequently fall short of the minimal threshold established in *Iqbal*. Plaintiff's allegations often amount to nothing more than formulaic recitations of the elements of a claim supported by legal conclusions couched as factual allegations. Plaintiff also often employs terms so vague or ambiguous that it is impossible for the Court to determine if the conduct they describe rises an actionable level.

I.   *Abuse of a Vulnerable Person (ORS 124.100)*

ORS 124.100(2) creates a statutory cause of action for physical and financial abuse of a "vulnerable person." ORS 124.100(2), (4) (cause of action); ORS 124.105 (physical abuse); ORS 124.110 (financial abuse). Plaintiff alleges that defendant's actions amounted to both physical and financial abuse of a vulnerable person under Oregon law.

A.   *Physical Abuse*

An action may be brought under ORS 124.100 for physical abuse when the defendant engages in (1) conduct that would constitute the crimes of assault, menacing, recklessly endangering another person, criminal mistreatment, rape, sodomy, unlawful sexual penetration, sexual abuse, strangulation, ORS 124.105(1); (2) subjecting a vulnerable person to prolonged deprivation of food or water, ORS 124.105(2); and (3) using physical or chemical restraints or psychotropic medication on a vulnerable person without an order from a licensed physician, ORS 124.105(3). The Amended Complaint does not specify a theory of physical abuse, but the parties' arguments focus on a theory of fourth-degree assault under ORS 163.160.

As relevant here, ORS 163.160 provides that "[a] person commits the crime of" fourth-degree assault if the person "[i]ntentionally, knowingly or recklessly causes physical injury to another[.]" Plaintiff alleges that defendant caused physical injury by making her cancer worse. Plaintiff also alleges that defendant "knew or should have known of Plaintiff's vulnerable status, and that her conduct would cause both emotional and physical injury[.]" Amend. Compl. ¶ 9. But this allegation is too conclusory to allege facts supporting a knowing mental state. Similarly, plaintiff's allegations do not support an inference that defendant was aware that her alleged harassing messages and electronic meddling "created a substantial and unjustifiable risk of physically injuring another person" or that defendant "consciously disregarded that risk and, by doing so, grossly deviated from the standard of care that a reasonable person would observe in the situation[.]" *State v. Teitsworth*, 257 Or. App. 309, 313 (2013) (describing the "reckless" element of fourth-degree assault). Accordingly, to the extent that plaintiff's physical abuse claim is based on an assault theory, the claim is dismissed.

The only other theory of physical abuse that is potentially relevant to plaintiff's allegations is that defendant engaged in conduct that would constitute menacing under ORS 163.190. ORS 124.105(1)(b) (an action for physical abuse may be brought for conduct that would constitute menacing). Menacing occurs when a person "by word or by conduct . . . intentionally attempts to place another person in fear of imminent serious physical injury." ORS 163.190. Here, plaintiff alleges that defendant sent her harassing communications "in an effort to terrorize, harass, and

intimidate" her and "place her in fear for her physical and emotional safety[.]" Amend. Compl. ¶ 8(b). That bare assertion does not meet federal pleading standards. Additionally, plaintiff does not allege sufficient factual detail about the communications to assess whether they were, as plaintiff alleges, intended to place plaintiff in fear, let alone fear of imminent serious physical injury. Accordingly, plaintiff has failed to state a claim for physical abuse of a vulnerable person.

B. *Financial Abuse*

An action may be brought under ORS 124.100 for financial abuse "[w]hen a person wrongfully takes or appropriates money or property of a vulnerable person, without regard to whether the person taking or appropriating the money or property has a fiduciary relationship with the vulnerable person." ORS 124.110(1)(a). Defendant argues that plaintiff has not alleged a taking of money or property as contemplated by Oregon's financial elder abuse laws.

Plaintiff alleges that defendant wrongfully took or appropriated plaintiff's "identity and property" by (1) accessing plaintiff's email account; (2) logging into "one or more financial accounts owned by Plaintiff;" (3) using plaintiff's identity "to engage in presently unknown number [*sic*] of online transactions[;]" and (4) by harassing her. Amend. Compl. ¶¶ 7-8.

ORS chapter 124 does not define the phrase "takes or appropriates." However, Oregon courts give the term "take" its "ordinary meaning," which is "to transfer into one's own keeping [or to] enter into or arrange for possession, ownership, or use of[.]"

*Church v. Woods*, 190 Or. App. 112, 117 (2003); *Schmidt v. Noonkester*, 287 Or. App. 48, 54 (2017).

As an initial matter, plaintiff does not expressly allege that defendant committed financial abuse by taking or appropriating her money. To the extent that plaintiff seeks to allege a direct taking or appropriation, the Amended Complaint does not state a plausible claim. Plaintiff alleges that defendant accessed her financial accounts and used her identity to engage in an unknown number of transactions. Drawing all reasonable inferences in plaintiff's favor, those allegations, at most, establish that defendant had the ability to transfer or use plaintiff's money, not that defendant actually did so. To state a claim the factual allegations must present more than "the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678.

Plaintiff asserts three theories of financial abuse by "taking or appropriating" property: (1) defendant "took" plaintiff's interest in their father's trust because the purpose of her entire course of conduct was to obtain plaintiff's interest in the trust; (2) defendant "appropriated" her identity by using plaintiff's identity to engage in online transactions; and (3) defendant "appropriated" that plaintiff's email account and financial records by using and accessing them, respectively.

Plaintiff's allegations do not establish that defendant "took" plaintiff's interest in the trust. Plaintiff alleges that defendant's harassment "constitut[ed] an arrangement for possession of Plaintiff's property rights in" her father's trust. Amend. Compl. ¶ 8. That is a legal conclusion that the Court is not bound to accept as true. Moreover, plaintiff's remaining allegations do not establish that defendant's

conduct was such an arrangement. Arrange means to "plan," "make preparations for," or "come to an agreement, understanding, or settlement." *Schmidt*, 287 Or. App. at 55. Although plaintiff's response to the Motion to dismiss argues that defendant's purpose was to obtain plaintiff's interest in the trust, that purpose cannot reasonably be inferred from the sparse and vague allegations in the Amended Complaint.

Plaintiff's allegations also do not establish that defendant "appropriated" plaintiff's property. The Oregon Supreme Court recently defined, in dicta, the phrase "wrongfully takes or appropriates" as "refer[ring] to the improper acquisition by another person of the vulnerable person's money or property – such as by fraud, conversion, or theft." *Bates v. Bankers Life & Cas. Co.*, 362 Or. 337, 344 (2018). A recent decision from this district relied, in part, on that definition to conclude that financial abuse claims under ORS 124.110(1)(a) involve "the complete acquisition of, and not mere interference with or improper use of, a vulnerable person's money or property." *Goldingay v. Progressive Casualty Ins. Co.*, 306 F. Supp. 3d 1259, 1270 (D. Or. 2018). The court in *Goldingay* suggested that "interference with a vulnerable person's right of possession of money or property" may give rise to a claim if the interference was "so persistent or severe as to rise to the level of conversion or wrongful acquisition." *Id.* That definition of "takes or appropriates" is consistent with both the ordinary meaning of appropriate and with the term's definition in the context of Oregon's theft statutes. *See Webster's Third New Int'l Dictionary* 160 (unabridged ed. 2002) (defining "appropriate" as "to claim or use as if by an exclusive preeminent right" and observing that the term "signifies . . . to take over or acquire

without authority or with questionably authority, usu[ally] also implying a conversion to one's own use of the thing taken over"); ORS 164.005(1) (defining "appropriate" as to "[e]xercise control over property of another, . . ., permanently or for so extended a period or under such circumstances as to acquire the major portion of the economic value or benefit of such property").

Here plaintiff alleges that defendant interfered with her rights in her identity, email account, and financial accounts, but the Amended Complaint does not allege sufficient factual content to establish interference with that property that is so persistent or severe that it is equivalent to a conversion or wrongful acquisition. Accordingly, plaintiff has failed to state a claim for financial abuse of a vulnerable person. Because plaintiff also failed to state a claim for physical abuse of a vulnerable person, plaintiff's claim under ORS 124.100 is dismissed.

## II. *Intentional Infliction of Emotional Distress*

Intentional infliction of emotional distress requires that, among other things, a defendant's act constitute an "extraordinary transgression of the bounds of socially tolerable conduct," which is a question of law for the court. *McGanty v. Staudenraus*, 321 Or. 532, 543 (1995); *Harris v. Pameco Corp.*, 170 Or. App. 164, 171 (2000). Socially intolerable conduct is conduct that is "outrageous in the extreme." *Patton v. J.C. Penney Co.*, 301 Or. 117, 124 (1986). Conduct that is merely "rude, boorish, tyrannical, churlish and mean does not satisfy that standard, . . . nor do insults, harsh or intimidating words, or rude behavior ordinarily . . . result in liability even when

intended to cause distress." *Watte v. Edgar Maeyens, Jr., M.D., P.C.*, 112 Or. App. 234, 239 (1992) (quotation marks and citations omitted).

Plaintiff argues that whether conduct is socially intolerable is determined under the totality of the circumstances, which include "whether a special relationship exists between the defendant and plaintiff" and "whether the conduct was undertaken for an ulterior purpose or to take advantage of an unusually vulnerable individual." *Rosenthal v. Erven*, 172 Or. App. 20, 23-24 (2001). Plaintiff argues that, in this case, all three factors weigh in favor of concluding that defendant's conduct was an extraordinary transgression. However, plaintiff's and defendant's sibling relationship is not the kind of "special relationship" that *Rosenthal* was referring to. Instead, a "special relationship" is one where a heightened duty of care is imposed because of the plaintiff's reliance on defendant, such as the relationship between a physician and patient, an attorney and client, or a common-carrier and passenger. *Id.* at 23. The fact that unkind treatment from a sibling might be especially hurtful does not elevate the relationship to the level of a "special relationship" for purposes of IIED without some additional reliance. Additionally, plaintiff's allegations are too conclusory and vague to establish that she is an "unusually vulnerable individual." Finally, plaintiff does not allege enough factual detail about the communications, account activity, or online transactions to assess whether it was outside the bounds of what is socially tolerable. Accordingly, plaintiff's IIED is dismissed for failure to state a claim.

## III. *Computer Fraud and Abuse Act (18 U.S.C. § 1030)*

The CFAA is primarily a criminal statute that was enacted to give the federal government a means to prosecute hacking. *United States v. Nosal*, 676 F.3d 854, 858 (9th Cir. 2012). However, the CFAA provides for civil liability under certain narrow circumstances. 18 U.S.C. § 1030(g). Those circumstances include when an individual intentionally accesses a computer "without authorization or exceeds authorized access" and obtains "information contained in a financial record of a financial institution, or of a card issuer" or "contained in a file of a consumer reporting agency on a consumer" or "information from any protected computer[.]" 18 U.S.C. § 1030(a)(2)(A), (C).

Under the CFAA, the term "computer" means a "high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device[.]" 18 U.S.C. § 1030(e)(1). The term "protected computer" includes any computer "used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States[.]" 18 U.S.C. § 1030(e)(2).

A civil action under the CFAA must also involve one of the forms of harm described in subsection (c)(4)(A)(i), which include "the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis,

treatment, or care of 1 or more individuals" and "physical injury to any person." 18 U.S.C. § 1030(c)(4)(A)(i)(II), (III).

Plaintiff alleges that, by accessing plaintiff's email to send plaintiff's information to spammers, logging into "one or more" of plaintiff's "financial accounts," and "using Plaintiff's identity to engage in presently unknown number [sic] of online transactions[,]" defendant "accessed one or more computers without authorization or exceeded authorized access, and in doing so, obtained Plaintiff's information stored on a protected computer or stored in a financial record of a financial institution" in violation of the CFAA. Amend. Compl. ¶¶ 8(a), 19. Plaintiff further alleges that defendant's conduct caused "physical injury" and "the modification or impairment" of a "medical examination, diagnosis, treatment, or care" by making plaintiff's medical conditions worse. Amend. Compl. ¶ 20.

Although the definitions of the terms "computer" and "protected computer" are broad enough to encompass email and financial accounts, plaintiff's allegations that defendant did so "without authorization or exceeding authorized access" and that defendant "obtained . . . information stored on a protected computer" or "in a financial record of a financial institution" are bare assertions that are not entitled to the assumption of truth and are not supported by sufficient factual allegations in the Amended Complaint. Additionally, plaintiff has not plausibly alleged that defendant's conduct caused her to suffer a physical injury, nor has plaintiff plausibly alleged that defendant's poorly-described conduct interfered with plaintiff's medical examination, diagnosis, treatment, or care. As noted, formulaic recitations of the

elements of a claim are not sufficient, nor are legal conclusions. Plaintiff must allege sufficient facts to state a plausible claim. Accordingly, plaintiff fails to state a claim under the CFAA and that claim is dismissed.

IV. *Defendant's Motion to Make More Definite and Certain*

In the alternative, defendant seeks an order requiring plaintiff to her claims more definite as to legal theory, facts, and dates of the alleged conduct. Because the Court agrees with defendant that plaintiff's abuse, IIED, and CFAA claims must be dismissed and many of these issues should be resolved if plaintiff amends her complaint to meet the pleading standards under *Iqbal*, the Court denies defendant's alternative motion.

## CONCLUSION

For the reasons stated above, defendant's partial Motion to Dismiss (doc. 9) is GRANTED. Plaintiff's claims for abuse of a vulnerable person, IIED, and violation of the CFAA are dismissed. Defendant's motion for a more definite and certain statement is DENIED. Plaintiff is granted leave to amend her complaint. Within thirty (30) days of this order, plaintiff shall file a second amended complaint.

IT IS SO ORDERED.

DATED this 28th day of April 2019.

_____
Ann Aiken
United States District Judge